The State v. Leabo.

---

THE STATE v. LEABO, *Appellant.*

| 89 | 247 |
| 98 | 121 |

| 89 | 247 |
| 106 | 51 |

| 89 | 247 |
| 119 | 516 |

| 89 | 247 |
| 61a | 504 |

| 89 | 247 |
| 133 | 515 |

| 89 | 247 |
| 144 | 38 |

| 89 | 247 |
| 79a | 538 |

| 89 | 247 |
| a156 | 84 |

| 89 | 247 |
| e175 | 1575 |

1. **Practice**: SPECIAL VENIRE: STATUTE. Where a motion for a special venire is made three days before that on which a cause is set for hearing, the trial court has no discretion to refuse it, and it would be error to do so. Revised Statutes, section 2802. But where the motion is not made until the day of trial, the court may, in its discretion refuse it, and this court will not review its action; and the day the parties announce themselves ready for trial and a jury is ordered summoned is the day of trial.

2. ——: PREJUDICE OF SHERIFF: DISCRETION OF COURT. The trial court is not bound to take the affidavit of a party, that the sheriff is prejudiced against him, as conclusive under Revised Statutes, section 3894, but it has some discretion in the matter, and unless it appears that it has abused its discretion, its action will not be disturbed.

3. **Practice, Criminal**: JUROR, COMPETENCY OF: MURDER. One who, upon examination on the *voir dire*, declares that he would not convict a person accused of murder upon circumstantial evidence alone, is not competent to sit as a juror upon a trial for murder.

4. ——: EVIDENCE: EXPERT WITNESS: POST MORTEM EXAMINATION. The testimony of medical experts, as to the condition in which they found a body upon a second *post mortem* examination of it by them, is not inadmissible because such examination was made without notice to the defendant.

5. The **Evidence** in this case held abundantly sufficient to take the case to the jury.

6. **Practice, Criminal**: INSTRUCTION. An instruction that if defendant killed deceased by "choking and strangling" her, and by "suffocating and drowning her in the well" he is guilty, is not contradictory.

7. ———: NEW TRIAL: REFERENCE TO FORMER VERDICT. The prohibition contained in Revised Statutes, section 1965, against referring, on a new trial, to the former verdict, either in evidence or in argument, is equally applicable to new trials granted by the court in which an accused was tried, and trials had on a reversal of a judgment by the Supreme Court and the remanding of the cause for another trial to the court which rendered the reversed judgment.

8. ———: ———: ———. But a judgment will not be reversed because of reference by the prosecuting attorney in his closing argument to a former conviction of defendant, where such conviction was proved on the trial by a deposition taken and read in defendant's behalf, and such reference was provoked by the bantering, challenging character of defendant's counsel in his address to the jury.

*Appeal from Bates Circuit Court.*—Hon. James B. Gantt, Judge.

Affirmed.

*Holcomb & Silvers* for appellant.

(1) The defendant was entitled to a special venire. He made timely application for it, accompanied with his affidavit. R. S., secs. 2802, 3894; *Samuels v. State*, 3 Mo. 68; *State v. Jones*, 61 Mo. 232; *Fulweiler v. St. Louis*, 61 Mo. 479. (2) In determining the competency of jurors the court erred in permitting them to be examined on their *voir dire*, against the objection of defendant, as to whether they would convict of murder in the first degree upon circumstantial evidence alone. The court is asked to overrule *State v. West*, 69 Mo. 401, on this point. The oral definition or instruction of the prosecuting attorney* and the court defining circumstantial evidence was erroneous and should not have been given. The court can only declare the law by written instructions. (3) The court erred in permitting the state to introduce expert testimony in regard to the condition in which the body of Mrs. Leabo was found on the second *post mortem*, held December 28, eight days after

the first examination was made. This examination was *ex parte*. Whar. Crim. Ev. [8 Ed.] secs. 421, 422 ; 2 Whar. and S. Med. Jur., part 2, sec. 1246 ; Rogers' Expert Testimony, p. 20, sec. 14. (4) The instructions were all erroneous, except the seventh, as there was no sufficient evidence offered against the defendant to rest a verdict of guilty upon. (5) The first instruction directs the jury to find a verdict of guilty, if they believe from the evidence that the defendant first choked his wife to death and then drowned her in a well. This is an absurdity. *Wood v. Steamboat*, 19 Mo. 529 ; *Young v. Ridenbaugh*, 67 Mo. 574 ; *Belt v. Goode*, 31 Mo. 128 ; *Clark v. Kitchen*, 52 Mo. 316 ; *State v. Simms*, 68 Mo. 305. (6) All the instructions asked by defendant should have been given. (7) Error was committed in allowing the prosecuting attorney to refer in his closing argument to the verdict of the former jury that had tried and convicted defendant. R. S., sec. 1965 ; *State v. Cooper*, 45 Mo. 64 ; *State v. Alexander*, 66 Mo. 148 ; *State v. Lee*, 66 Mo. 168 ; *State v. Kring*, 64 Mo. 591 ; *State v. Johnson*, 76 Mo. 121. (8) The verdict was contrary to the evidence and was erroneous. *State v. Packwood*, 26 Mo. 340 ; *State v. Daubert*, 42 Mo. 242.

*B. G. Boone*, Attorney General, for the state.

(1) The application for a special venire was properly overruled, because it did not comply with Revised Statutes, section 2802, in not being made a sufficient length of time before the case was called for trial. *Rose v. St. Charles*, 49 Mo. 509. The court would not have been authorized in granting the order for a special venire simply on the naked affidavit of defendant. *State v. Wisdom*, 84 Mo. 185. (2) The definition of circumstantial evidence by the trial court was correct. It was as follows : "Circumstantial evidence is that kind of evidence in which the fact to be proved is not directly

attested by those who speak of it from their own actual
and personal knowledge of its existence, but it is to be
inferred or proved from the existence of other facts
satisfactorily established. The circumstances proved
should establish defendant's guilt beyond a doubt, and
point so clearly to his guilt as to exclude every other
reasonable hypothesis." 1 Bouvier's Law Dic. [12 Ed.]
title Evidence, 545 ; Burrill Cir. Ev. [2 Ed.] pp. 7, 8, 77 ;
*Com. v. Webster*, 5 Cush. 295 ; *Howard v. State*, 34 Ark.
440 ; *Eberhardt v. Sanger*, 51 Wis. 78 ; *Com. v. Sturti-
vant*, 112 Mass. 122 ; *vide* the charge to the jury by
Wells, J., in the *Sturtivant case* in appendix to Whar-
ton on Homicide [2 Ed.] 745. (3) No error was committed in challenging members of the panel from which the
trial jury was selected who answered that they would
not find one, accused of murder, guilty, on circumstantial evidence alone. *State v. West*. 69 Mo. 401 ; *State v.
Mann*, 83 Mo. 589. (4) The testimony of the physicians
who made the second examination of Mrs. Leabo's body
was competent. There is nothing to indicate that it was
not a fair and impartial autopsy, and its accuracy or authoritativeness could not have been enhanced by notice
to the defendant. Whar. on Crim. Ev. [8 Ed.] sec. 421 ;
*State v. Bowman*, 80 N. C. 432 ; *Boyle v. State*, 61 Wis.
447 ; 2 Whar. and Stil. Med. Jur., part 2, sec. 1247 ;
Rogers' Expert Testimony, sec. 14. The witnesses who
testified as to the wounds on the neck were all medical
men, and their testimony was admissible, whether defendant had notice of the autopsy or not. Whar. Crim.
Ev., sec. 412 ; *Ebos v. State*, 34 Ark. 520 ; *State v. Porter*, 34 Iowa, 131 ; *Waite v. State*, 13 Texas App. 180, and
cases cited. (5) Instruction number one on the part
of the state was approved by this court when this case
was here before. *State v. Leabo*, 84 Mo. 177. The other
instructions on the part of the state were correct. The
six instructions asked by defendant and refused were
properly refused. (6) The remarks made by the prose-

cuting attorney were not improper under the circumstances. They were not objected to at the time, nor were exceptions saved thereto. They do not come within the meaning of Revised Statutes, section 1965. *State v. Hayes*, 81 Mo. 576.

HENRY, C. J.—This is the second time this cause has been in this court on defendant's appeal. He was tried and convicted of murder of the first degree at the June term, 1884, of the Bates circuit court, and on appeal to this court the judgment was reversed and the cause remanded, at the October term, 1884. *State v. Leabo*, 84 Mo. 168.

The facts are detailed in the opinion delivered then, and it is not necessary to repeat them here. The evidence at the last trial was not materially different from that adduced on the former trial. The November term, 1885, of the Bates circuit court commenced on the second day of November. Seven days thereafter both the state and the accused announced themselves ready for trial, and the court ordered the sheriff to summon one hundred and twenty-five good and lawful men to be and appear in court at noon the following Wednesday, eleventh day of November. On the same day that the sheriff was ordered to summon a jury the defendant filed his motion for a special venire and that the same be summoned by the coroner, alleging that the sheriff was so prejudiced against him that he would not impartially serve the writ and return impartial jurors. This he verified by his affidavit. The court overruled his motion, and this is assigned as error. Section 2802 provides that, either party in a civil or criminal cause triable by jury, "shall be entitled as of course to an order for a special venire on motion made therefor three days before that on which the case is set for trial." The same section gives the court discretion as to the taxation of the costs of such special jury.

Regarding defendant's motion as simply one for a special venire, it was not made three days before that on which the case was set for trial, but on that day, and, therefore, the court had a discretion to make the order or not, with which this court cannot interfere. If it had been made in due time, the court, under section 2802, would have had no discretion and would have erred if it had refused the application. But the motion also alleged that the sheriff was so prejudiced against the defendant that he would not impartially summon jurors in the case. Section 3894 provides that the coroner of the county "shall serve and execute all writs and precepts and perform all other duties of the sheriff when the sheriff shall be a party, or when it shall appear to the court out of which the process shall issue, or to the clerk thereof, in vacation, that the sheriff is interested in the suit, related to or prejudiced against any party thereto, or in any wise disqualified from acting." The question arises upon this section whether the court is bound to take the affidavit of the party as conclusive proof of the prejudice alleged against the sheriff or not. We think not. The court has some discretion in the matter, implied from the requirement that the court shall direct the process to the coroner, "when it shall appear to the court" that the sheriff is prejudiced as alleged. Can we say that it did so appear to the court? No testimony was offered to prove the alleged prejudice of the sheriff. A case might be presented of an abuse of the discretion given to the court in this matter which would justify a reversal of its judgment; but such abuse does not appear in this case.

Nor did the court err in excluding from the panel of jurors those who declared on their *voir dire* that they would not convict one of murder on circumstantial evidence alone. Two trials of this cause, in one of which there was a hung jury, disclosed that the testimony against the accused was exclusively circumstantial, and

to admit such men upon the panel would have been trifling with justice. This question was considered in *State v. West*, 69 Mo. 401, and we see no reason for departing from the rule there announced. There is no complaint that a panel of forty competent jurors was not obtained.

Counsel for defendant cites Wharton's Criminal Evidence in support of the proposition that the court erred in admitting experts to testify to the condition in which the body of Mrs. Leabo was found on the second *post mortem*, held December 28, eight days after the first was made, and without notice to defendant. Mr. Wharton says : "The practice has been to receive for what it is worth" such testimony, but suggests that "whenever notice of such observations to the opposing interests is practicable such notice should be given." Section 421. The manner in which the examination is made affects the credibility of the witness, but does not render his testimony incompetent. In Wharton and Stilles' Medical Jurisprudence, section 1246, it is said, speaking of this character of testimony, that: "Of course when investigations are conducted by a coroner, or magistrate, immediately after the commission of a crime, the public action of such functionary is adequate notice to all parties that the procedure is taking place." "But when, after these preliminary inquiries are over, an examination is desired by one of the parties in interest, and when this examination relates to a subject matter not fleeting, but continuing, then the examination is analogous to the deposition of a witness and the policy of the law requires that it should be taken only after notice to the opposite side. Sometimes, perhaps, testimony of value inadvertently taken will be excluded by the application of this rule." Again, it is said in the same section, "But there can be no question that when the question comes fairly up such examination, when taken flagrantly *ex parte* at a time when there could readily have been

notice to the opposite side, will be ruled out as inadmissible."

This seems to support the position of defendant's counsel, but no court has yet so ruled, as is by the learned authors conceded ; nor do we think the reasoning sound upon which the proposition is based. There is but a slight, if any, analogy between the examination by an expert, or any one else, of physical objects, with a view of testifying to the result of his observations, and the deposition of a witness, as regards notice. The notice in the latter case is required in order that the opposite side may have an opportunity to cross examine the deponent upon the *facts* testified to by him. The expert, when he comes to testify, is subject to that cross-examination as to the facts he observed on his examination of the body, and other experts may be examined with relation to the theories advanced by him upon the facts to which he may testify. Any one who is a practical surveyor may testify with respect to the boundaries of a tract of land in controversy between two litigants. Is his testimony to be excluded because he made his survey without notice to the other party ? It is a matter which goes to the credibility of the witness ; but numerous instances might be noted in which, if the rule contended for is to prevail, a litigant would have to give as many notices to his adversary as he has witnesses summoned in his behalf. "Examinations of an alleged lunatic conducted by a professed specialist, or examinations of blood on clothing, or of alleged poison contained in the stomach of a deceased person, or in bottles or utensils," are some of the instances in which the same authors think notice should be given. It is to be observed that the professed specialist, when he testifies to the insanity of the alleged lunatic, would meet with but little credit if he merely testified to the insanity of the patient, without stating the facts upon which he bases his opinion, and it matters not that he ascertained the

facts by an examination of the patient. Non-professional witnesses can testify to facts in their knowledge, acquired without notice to the other side, and so we think may professed specialists, and the credibility of their testimony depends upon the same principles as that of other witnesses. Specialists give their opinion upon hypothetical facts of which they have no personal knowledge, and it would be strange if their opinions, based upon facts within their own knowledge, should be excluded, and also their testimony as to the facts themselves, because they acquired their knowledge of the facts when the opposite party was not present at the time and place when and where they learned the facts. It frequently is important in a criminal cause to prove the distance between two given points, the nature of the ground, its topography, etc., and can it be that after the crime committed, the testimony of a witness who has made measurements and observations is inadmissible because the party who had him to make them failed to notify the other side to be present? We are not prepared to yield our assent to the proposition; a proposition, which, it is conceded, no court has yet announced to be the law.

The only objection to the instructions given, except the first, is that "there was not sufficient evidence offered against defendant to rest a verdict of guilty upon." We think otherwise. It matters not that, if we had been jurors, we might have rendered a different verdict; that we might have entertained a reasonable doubt of his guilt. There was abundant evidence tending to criminate the accused, all circumstantial in its nature, but to reverse the judgment on the ground contended for would be a precedent for the reversal of every conviction obtained on circumstantial evidence.

The first instruction given for the state is identical with instruction number one, given on the former trial, and now, as then, we see in it no error. It does not bear

the construction placed upon it by defendant's counsel. It does not direct the jury to find defendant guilty if they find that he *first choked his wife to death, and then drowned her in a well.* It contains no such absurdity, but declares that if he killed her "by choking and strangling her, by fixing, fastening, etc., his hand about her neck and throat, and then by throwing her so choked and strangled into the well," etc. It declared. that if he killed her by the means specified, which are all those means named in the instruction, viz : by choking and strangling, and then throwing her into the well—not by choking and strangling her to death and then throwing her into the well—choking and strangling do not necessarily kill. As it was said in the opinion delivered in this case on the former occasion, she might have been "choked and strangled to a point of insensibility," and then thrown into the well, and killed by all the means so employed conjointly, and by none of them separately. The instruction was based upon the testimony, which left in doubt whether he choked her to death, and then threw her into the well, or choked and strangled her and threw her into the well before life was extinct. And it cannot be that the jury was bound to. find either the one or the other, or acquit the defendant ; if fully satisfied that he committed the murder, either by choking and strangling her to death, or by choking and strangling her, and then consummating the homi-- cide by throwing her into the well.

The last alleged error is that the prosecuting attorney in his closing address to the jury commented on the verdict of a former jury which convicted the defendant. The attorney for the defence, Mr. Silvers, in his address to the jury, speaking of certain testimony for the state given by witnesses who had served on the jury which convicted defendant at the first trial, and who were introduced to prove that defendant's testimony in his own behalf on that occasion was materially different

from his testimony on the last trial, said : " Why don't they speak about the second trial of this case when the jury hung? Now on that trial we proved him innocent beyond a reasonable doubt." Here the prosecuting attorney objected to the attorney's remarks and the court admonished him that such allusions were improper. The attorney proceeded and said : "There is no contradiction between this trial and the first trial in defendant's evidence," etc. "In the name of Heaven what motive could the defendant have in changing his testimony from what it was before that jury. I ask the attorneys on the side of the state to show any reason why John Leabo should testify different now from then ?"

The prosecuting attorney in his closing address said : " Mr. Silvers has asked me to give you a motive or a reason why defendant should change his testimony. * * * What is the motive and reason for changing his testimony? It is plain enough. He testified before that jury, as those jurors say he did, and that jury, one of the best and most intelligent that ever sat on a case in this court house, convicted him on that trial, and now he comes here and changes his story for the purposes of this trial." The court did not check or rebuke the prosecuting attorney, as it should have done, nor did defendant's counsel interpose any objection at the time.

Section 1965 provides that, "Verdicts may be set aside and new trials awarded on the application of the defendant. A new trial is a re-examination of the issue in the same court. The former verdict shall not be used or referred to on the subsequent trial either in the evidence or the arguments." We hold this law to be equally applicable to new trials granted by the court in which the accused was tried, and trials had on the reversal of a judgment by this court and remanding of the cause for another trial to the court which rendered the reversed

judgment. And, if no sufficient excuse could be found in the record for the conduct of the prosecuting attorney, the judgment should be reversed. The defence read in evidence a deposition taken by that side in which the deponent, in answer to a direct interrogatory propounded, stated that he was present at the former trial at which defendant was convicted. No objection was made to this at the taking of the deposition, nor was the trial court asked to suppress or exclude that part of the testimony of the witness, nor did defendant's counsel make any objections when it was read to the jury; and coupling this with the challenge he made to the state's attorney to name a motive defendant could have had for changing his testimony, while it does not excuse, but only palliates the conduct of the prosecuting attorney, it shows that the defence is to blame for the allusion made to the former conviction by the prosecuting attorney. The fact that the defendant had before been convicted was already in testimony offered by the defence.

We do not mean to say that the conduct of the prosecuting attorney was proper. We have had repeated occasions recently to censure the intemperate zeal of prosecuting attorneys displayed in criminal causes ; and have again and again tried to impress upon them that they are *under the same obligations, as representatives of the state in those cases, to protect an innocent person accused of crime as to convict the guilty,* but we are not inclined to reverse a judgment for such conduct when it is apparent that it occasioned no injury to the accused. Here the fact that there had been a former conviction of the defendant had been proved in a deposition taken and read in defendant's behalf. And the bantering, challenging character of the defendant's counsel in his address to the jury provoked the prosecuting attorney to say what he did. The fact alluded to was known to the jury, and considering all the circumstances, under

which the remarks of the prosecuting attorney were made, they could not possibly have had any influence upon the minds of the jurors to induce their verdict.

The defendant has been twice convicted by a jury of his county, and however painful it may be to us to announce, as the result of our careful examination of this record, that the sentence pronounced against him must be executed, yet we have no function to perform but to declare the law. The judgment is affirmed. All concur.