The State v. Pagels.

---

## THE STATE v. PAGELS, *Appellant.*

1. **Criminal Practice:** CAPITAL CASE: APPEAL: STAY OF EXECUTION. The right of appeal in a capital case is necessarily coincident with that of a stay of execution until the appeal can be heard.

2. ———— : CONTINUANCE. An application for a continuance on the ground of absent witnesses is insufficient, although it alleges the testimony is material, if its materiality is not otherwise shown by any statements of the affidavit.

3. ———— : ————. All intendments are taken against the statements contained in the application for a continuance.

4. ———— : ————. The fact that a defendant, in a criminal case, afterwards relied on the defence of insanity, would not make his application for a continuance good, which failed to state that he intended to interpose the defence of insanity.

5. ———— : ————. The counsel for the defendant have no right to rely on the statements of the state's attorney, or the clerk of the court, as to when the case of the defendant will be docketed or called for trial, and their neglect to prepare for trial on account of such reliance will not be cause for continuance.

6. **Witnesses.** The right of compulsory process for witnesses does not extend to non-resident ones.

7. **Juror, Competency of.** One who had declared his intention of becoming a citizen according to law, not less than one year nor more than five years before the trial, and who was, therefore, a voter under the state constitution, was competent, as regards citizenship, to serve as a juror.

8. ———. One is not disqualified to serve as a juror because of aversion to "a bogus plea of insanity."

9. **St. Louis Criminal Court :** STENOGRAPHER. It is for the judge of the St. Louis criminal court to determine whether the official stenographer shall attend upon the court in the trial of a cause, and his action is not the subject of review in the Supreme Court.

10. **Criminal Practice :** PLEA OF INSANITY. The plea of insanity is itself, and of necessity, a plea in the nature of a plea of confession and avoidance, and where the fact of the killing was abundantly established by the evidence, as well as by the admissions of the defendant, in a case where such plea was interposed, it becomes immaterial whether testimony as to the dying declarations of the deceased was properly introduced in evidence or not.

11. ——— : WITNESSES NOT INDORSED ON INDICTMENT. The state can introduce witnesses to testify on the trial, although their names are not indorsed on the indictment. ( R. S., sec. 1802).

12. ——— : EVIDENCE : RECORDS OF PUBLIC INSTITUTIONS OF A SISTER STATE. That certified copies of the records of hospitals for the insane in a sister state may be introduced in evidence, under Revised Statutes, section 2285, it is necessary to show that such institutions were public offices of a sister state.

13. ——— : ——— : STATUTES OF SISTER STATE. The printed statute book of the state of Illinois, offered in evidence, was competent, under Revised Statutes, section 2272, to show what the statutes of the state were.

14. ——— : ——— : CERTIFICATE OF SUPERINTENDENT OF POOR HOUSE. The certificate of the superintendent of the poor house of St. Louis, that the defendant had been confined therein as an insane patient, is not competent as evidence to prove that fact.

15. ——— : RIGHT OF JUDGE TO EXAMINE WITNESSES. The judge of the trial court has the right to interrogate a witness, if he deems it necessary, to supply some omitted and legitimate question, or to fully develop the facts bearing on the case.

16. ——— : DUTY OF PROSECUTING ATTORNEY. Prosecuting officers, even in the heat of debate, ought not to forget that they owe a duty to the defendant as well as to the state ; to the state, to fairly prosecute and to endeavor to secure conviction by all proper and legitimate methods ; to the defendant, to refrain from doing or

saying aught which the highest sense of professional honor will not sanction.

17.   ———— : ————.   Exceptions must be saved to improper remarks of the prosecuting attorney to have the same reviewed in the Supreme Court.

18. **Criminal Law**: INSANITY: INSTRUCTION.  On the trial of defendant for murder, where the defence of insanity was interposed, the court properly denied an instruction asked by the defendant, that if the jury "believe and find, from the evidence, that in the commission of the deed with which he stands charged, the defendant obeyed an uncontrollable impulse, springing from an insane delusion, they will find him not guilty."

19. ———— : ———— : ————.   Instructions given by the court on the question of insanity, sanctioned and commended.

*Appeal from St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*George Bullock* and *J. R. Kinealy* for appellant.

(1)   The court erred in overruling defendant's motion for a continuance.   Const. of U. S., amend. 14, sec. 1; Const. of Mo., art. 2, sec. 22; *State v. Berkley, ante*, p. 41; *State v. Jennings*, 81 Mo. 193, dissenting opinion of Judge Sherwood.   (2)  Defendant's challenges to jurors Lang and Ryan should have been sustained. *Maloy v. Duden*, 25 Fed. Rep. 673; R. S. U. S. (1878), title 30, sec. 2165; Const. of U. S., amend. 14, sec. 1; Const. of U. S., amend. 6; R. S., ch. 43, sec. 2777; *Bank of Missouri v. Anderson*, 1 Mo. 244; *Shumaker v. State*, 5 Wis. 324; *Seal v. State*, 13 S. & M. 286. (3)  It was an abuse of discretion to refuse to allow the official stenographer to report the case.   (4)  The alleged dying declarations of the deceased were improperly received in evidence.   *Warren v. Nichols*, 6 Metc. 261, 264; *Commonwealth v. Richards*, 18 Pick. 434; *Marsh v. Jones*, 21 Vt. 373, 380.   (5)  Witness Emmett should not have been allowed to testify.   R. S., sec. 1802, p. 304; *State v. Roy*, 83 Mo. 268; *Perry v. People*, 14 Ill. 496.   (6) The certified copies of the records offered by

defendant should have been admitted in evidence. R. S., sec. 2285 ; 1 Greenl. on Evid., secs. 483, 484 and 496, and cas. cit. ; *Karr v. Jackson*, 28 Mo. 316 ; *State v. Lynde*, 77 Me. 561 : *Barney v. Schneider*, 76 U. S. 248. (7) The action of the court in taking part in the examination of Dr. Lutz, and his questions to Dr. Bauduy, and his remarks at the time were erroneous. *Rickerson v. State*, 1 S. E. Rep. 178 ; *Cronkhite v. Dickerson*, 51 Mich. 177 ; *Mullinur v. Bronson*, 114 Ill. 510, 514 ; *Lycan v. People*, 107 Ill. 423, 428. (8) The court should have checked and rebuked the circuit attorney for his remarks during his closing argument to the jury. *State v. Leabo*, 89 Mo. 247 ; *Strauss v. Railroad*, 86 Mo. 421 ; *State v. Barham*, 82 Mo. 67 ; *State v. Mahly*, 68 Mo. 315 ; *State v. Lee*, 66 Mo. 165. (9) The instruction as to character was incomplete. *State v. Ross*, 29 Mo. 32. (10) In the instruction as to credibility of witnesses, the court improperly used the following words, namely : "This is applicable alike to the medical expert testimony, as to the testimony of the ordinary witnesses." *State v. Ross*, 29 Mo. 32 ; *People v. Lyons*, 49 Mich. 42 ; R. S., sec. 1918 ; *Jones v. Jones*, 57 Mo. 138 ; *State v. Smith*, 53 Mo. 267. (11) The instruction as to the hypothetical case should not have been given, and being given, the word, "whenever," should not have been used, and the word, "material," should have been used between the words, "supposes" and "facts." *State v. Ross*, 29 Mo. 32 ; *State v. Ostrander*, 30 Mo. 13 ; *Dacey v. People*, 116 Ill. 555 ; *Iron Mountain Bank v. Murdock*, 62 Mo. 70 ; *State v. Brosius*, 39 Mo. 534. (12) In the instruction as to the proof necessary to entitle defendant to a verdict of not guilty, by reason of his insanity, the words, "reasonable satisfaction," therein used should have been defined. *Digby v. American Insurance Co.*, 3 Mo. App. 603 ; *State v. Sharp*, 71 Mo. 218 ; *Wiser v. Chesley*, 53 Mo. 547 ; *Edelmann r. St. Louis Transfer Co.*, 3 Mo. App. 503. (13) The instruction as to partial and

general insanity should not have been given. *State v. Laurie*, 1 Mo. App. 371; *Clark v. Kitchen*, 52 Mo. 316. (14) The instruction asked for by the defendant should have been given. *Panton v. People*, 114 Ill. 505; Spurzheim on Insanity, p. 50. (15) The court erred in defining insanity, and also in instructing that it must be such as to render the person suffering therefrom incapable of distinguishing between right and wrong in reference to the particular act charged. *Panton v. People*, 114 Ill. 505; Spurzheim on Insanity, 50; Winslow on the Brain and Mind, ch. 3.

*B. G. Boone*, Attorney General, *A. C. Clover* and *C. O. Bishop* for the state.

(1) The application for a continuance was properly overruled. The consent of the circuit attorney fully warranted the refusal of the court to grant the continuance. R. S., sec. 1886. The constitutional provision allowing the accused compulsory process for his witnesses has evident reference to only such process as the state can exercise within her own borders. *State v. Butler*, 67 Mo. 59, 62. The affidavits of counsel showed no diligence in preparation for trial, although more than five months had elapsed since their appointment, and two continuances had already been granted. And no reasons or special facts were set forth why a longer period was asked or required. *State v. Jewell*, 90 Mo. 467. (2) Jerry Lang was not incompetent, being over twenty-one years of age, and having taken out his first papers more than one year and less than five years before the trial. *State v. France*, 76 Mo. 681. Juror Ryan was not disqualified by reason of a prejudice against a bogus plea of insanity, he having declared on his *voir dire* that he could try the prisoner fairly upon his plea. *State v. Baber*, 74 Mo. 296–7; *State v. Burns*, 85 Mo. 47. (3) The refusal of the court to order its stenographer to report the evidence is no ground for reversal.

The stenographer is for the convenience and assistance of the court and prosecuting attorney to report such matter as directed by them. Sess. Acts, 1881, p. 106, sec. 4. (4) The dying declarations of deceased were properly received in evidence. It was made most apparent by the introductory testimony of the physician, not only that deceased was *in articulo mortis*, but had wholly abandoned all hope of recovery, and was under a well-founded apprehension of immediate and impending dissolution. *State v. Simon*, 50 Mo. 370; *State v. McCannon*, 51 Mo. 160; *State v. Draper*, 70 Mo. 546. It was sufficient that the substance of the declarations should be given in evidence, the witness stating that after the lapse of a year it was impossible to repeat the exact language. Wharton's Crim. Evid. [9 Ed.] sec. 301; *State v. Able*, 65 Mo. 371–373. And the witness was strictly confined to such declarations only as related to the immediate circumstances of the shooting. (5) Officer Emmett was a competent witness on behalf of the state, notwithstanding his name may not have been endorsed upon the indictment. R. S., sec. 1082; *State v. Nugent*, 71 Mo. 136; *State v. Griffin*, 87 Mo. 608; *State v. O'Day*, 89 Mo. 561. This point must be saved by a motion to quash. *State v. Roy*, 83 Mo. 268. (6) The papers offered in evidence by appellant as "exemplifications" are not such as are contemplated by the statute he invokes. R. S., sec. 2285. There was no exception saved to the conclusion of the act of the legislature of Illinois, nor of the ordinances of the city of St. Louis. It is now too late to complain. *State v. Ray*, 53 Mo. 345. (7) The court had the undoubted right to examine the witnesses, Lutz and Bauduy, for its own information upon matters relevant to the issue, and necessary to present the case properly before the jury in instructions. Wharton's Crim. Evid. [9 Ed.] sec. 452. (8) Appellant saved no exception at the time to

the argument of the circuit attorney, of which he now complains. *State v. Forsythe*, 89 Mo. 667. (9) The instructions given by the court are unobjectionable, either in form or substance. (*a*) That touching insanity as a defence to a criminal prosecution was technically exact and declared the doctrine as now firmly established by a series of well-considered decisions. *State v. Redemeier*, 71 Mo. 173, and cas. cit. (*b*) That touching the credibility of witnesses was in the approved form, and it was eminently proper to tell the jury that the expert testimony was subject to the same tests as that which was not expert. *State v. Redemeier*, 71 Mo. 174; Wharton's Crim. Evid. [9 Ed.] sec. 420; Lawson's Expert Evid., p. 240, rule 44. (*c*) That touching the hypothetical case was correct. "The duty of determining whether the facts assumed in the hypothetical case put by the state, as well as in that put by defendant, had or had not been proved, rested with the jury." *State v. Baber*, 74 Mo. 297. (*d*) That touching evidence of defendant's good character was technically correct. *State v. Kilgore*, 70 Mo. 546. (*e*) There was no error in using the term, "reasonable satisfaction," without defining it. This is not a technical legal phrase, and jurors will be presumed to understand their vernacular tongue. This exact expression was approved in *State v. Redemeier*, 71 Mo. 174-5. (10) The instruction asked by defendant was properly refused. The law in this state does not recognize an "uncontrollable impulse" as an excuse for crime. *State v. Erb*, 74 Mo. 202-3.

SHERWOOD, J.—On the evening of November 12, 1885, in the city of St. Louis, Jerry Pagels, the defendant, with a double-barreled shot-gun, shot and killed Samuel Kohn. He was indicted for the crime at the January term, 1886. Was arraigned and pleaded not guilty, March 22, 1886. At the May term following, the cause was continued, and at the same term, June 7, on

the representation of the defendant that he was without counsel, the court appointed Messrs. George Bullock and Jas. R. Kinealy, as his attorneys. At the July and October terms, the cause was continued by general order, and was finally set for trial December 1, 1886 ; but, on representation of defendant's counsel that the defendant was not ready for trial, the trial was further postponed until the thirteenth of that month, when it began, resulting in a verdict of guilty and sentence accordingly. Whereupon, an appeal was granted the defendant, accompanied by what, in capital cases, is its necessary incident, a stay of execution until his appeal could be heard by this court. The right of appeal in a capital case is necessarily coincident with that of a stay of execution until that appeal can be heard. Indeed, it is somewhat difficult to see how, in such a case, the former right can be exercised or be efficacious unless in conjunction with the latter right. There are many errors assigned as reasons for reversing the judgment of the criminal court. They will now be considered.

I. The application for a continuance was properly denied. The defendant's affidavit therefor disclosed neither relevancy nor diligence. The witnesses resided in Illinois, who were relied on to prove the insanity of the defendant's blood cousin, Frederick Just, who, it seems, had been confined at various times in asylums for the insane, at Jacksonville and Anna, Illinois, and that the insanity of said Just was "hereditarily transmitted from the paternal ancestors." Of the fact of ancestral insanity the defendant could not well have been ignorant, and as he states he was acquainted with the witnesses, their condition in life, and places of residence, it is inconceivable that before December 8, 1886, he was not aware that those witnesses knew the facts already mentioned. But waiving that view of the matter, and treating the affidavit as true according to the usual rule, it does not appear that the "*paternal*

*ancestors*" of Frederick Just, "the son of the brother of affiant's mother," were the paternal ancestors of the defendant; and if they were not, the materiality of the desired testimony is not apparent, and in cases of this sort all intendments are taken against the statements in the application. But the application is insufficient for the reason that, though it alleges that the testimony is "*material*," its materiality is not shown by any statement. What does it matter if the facts set forth in the application be admitted, how do they affect the *defendant?* It does not appear that he intended to interpose the plea of insanity, and if he did not, it was wholly immaterial whether the allegations in the application were true or otherwise. The relevancy of the statements in the application to the issue joined must always appear, together with what will render apparent the defendant's own want of laches, in order to make the application good. 1 Bishop Crim. Proc., sec. 951a. The fact that the defendant did afterwards rely on the defence of insanity could not retroactively make the affidavit good.

As the affidavit of the defendant did not comply with legal requirements, the affidavits of his counsel could add to it no strength. Besides, those affidavits disclose no diligence. Over six months had elapsed between the time of the appointment of the counsel and the occurrence of the trial, and during that time they did nothing, so far as appears, in ascertaining what the line of defence would be, and making preparations therefor; and they certainly had no right to rely on the statements of the circuit attorney, or the clerk of the criminal court, as to when the case of the defendant would be docketed or called for trial. And the refusal of the continuance involved no denial of a constitutional right. The right to compulsory process for witnesses does not, and cannot, extend to non-resident witnesses. *State v. Butler*, 67 Mo. 59.

II. Was Lang competent to serve as a juror? He

had lived in this country about eighteen years, resided in the city of St. Louis some three years, was over twenty-one years of age, had declared his intention of becoming a citizen according to law, not less than one year, nor more than five years prior to the defendant's trial; he was, therefore, a citizen under the terms of section 2, of article 8, of our state constitution, so far as being a voter is concerned, and that privilege is one of the highest marks and attributes of citizenship. Taken in its "plain, ordinary and usual sense," as words are required to be taken by section 3126, Revised Statutes, and this is the general rule ( Smith's Comm., sec. 481 ), the word *citizen* may well mean one entitled to vote. If so, Lang was competent to serve as a juror under the provisions of section 2777, Revised Statutes. Nor was Ryan disqualified as a juror, because of his aversion to a "bogus plea of insanity." *State v. Burnes*, 85 Mo. 47 ; *State v. Baber*, 74 Mo. 292.

III.    It belongs alone to the judge of the criminal court to say whether the official stenographer "shall attend upon said court" in any given cause; and his action, whether reasonable or otherwise ( in this instance it appears to have been reasonable ), is not the subject of review here, and certainly furnishes no ground for a reversal of the judgment.

IV.    The fact of the killing of Kohn by the defendant was abundantly established by the evidence, as well as by the admissions of the defendant. Indeed, he plea of insanity is itself, and of necessity, a plea in the nature of a plea of confession and avoidance, the courts differing as to the *quantum* of evidence to sustain such a plea.    1 Whart. Crim. Law [9 Ed.] sec. 61. Such plea is but a bare denial of a *part of* the government's case ; it admits the *act* charged, but avers that there was no criminal intent accompanying the act, and, therefore, denies the *crime* charged.    2 Bish. Crim. Proc. [3 Ed.] sec. 669.    This being the case, it is wholly

immaterial to discuss the point whether testimony as to Kohn's dying declarations was properly received in evidence, since those declarations only went to an admitted fact, to-wit, the homicide.

V.    Under the provisions of section 1802, it was competent for Officer Emmett to testify on behalf of the state, though his name was not endorsed on the indictment.  *State v. Roy*, 83 Mo. 268; *State v. Griffin*, 87 Mo. 608; *State v. O'Day*, 89 Mo. 561.

VI.    In order for the introduction, as evidence, of certified copies of the records of the hospitals for the insane at Anna and Jacksonville, Illinois, it was necessary, under the terms of section 2285, to show that such institutions were "*public offices* of a sister state." Under section 2272, the printed statute book of Illinois was competent evidence to show what the statutes of that state were, and thus lay the basis for introducing the evidence desired; and error occurred in rejecting that book.    There was, however, no exception saved to the ruling of the court, rejecting the statutes of Illinois when offered in evidence for that purpose, and without those statutes, the certified copies aforesaid were worthless.    Relative to what is termed the certificate of Thos. Cleary, superintendent of the poor house of the city of St. Louis, it suffices to say that it does not fall within the provisions of section 2285, since it is neither a record nor exemplication of office books kept in any public office of the United States, nor of a *sister state;* in form it is but a *private letter* from the superintendent in relation to J. F. Pagels having been confined there as an insane patient.

VII.    There can be no doubt of the right of a trial judge to interrogate a witness if he deems it necessary to supply some omitted and legitimate question, or to fully develop the facts bearing on the case.    Whart. Crim. Evid., sec. 452, and cas. cit.    In the present instance the questions propounded to Drs. Lutz and

Bauduy were proper and not obnoxious to any valid objections.

VIII. The concluding remarks of the circuit attorney were not based on the evidence of Dr. Bauduy, were a misrepresentation of that evidence, and his attention had been thrice called to the misstatement of the testimony which he had made. It is true that the trial judge, on objection made by defendant's counsel, indirectly administered a rebuke by causing the stenographer to read Dr. Bauduy's answer to the question propounded by the court; but it would have been better if such conduct had received pointed rebuke. Prosecuting officers, even in the heat of debate, ought not to forget that they owe a duty to the defendant as well as to the state: to the state, to fairly prosecute and to endeavor to secure conviction by all proper methods and legitimate modes; to the defendant, to refrain from doing or saying aught which the highest sense of professional honor will not sanction. But, notwithstanding these observations, observations not infrequently made *heretofore* (*State v. Leabo*, 89 Mo. 247; *State v. Barham*, 82 Mo. 67), inasmuch as no exception was saved to the objectionable remarks, we say no more on the point, by no means intimating, however, that it would have been reversible error even if exception had been saved.

IX. As some of the instructions are now to be examined, it becomes appropriate to give a *résumé* of the evidence in the cause *pro and con.*, so that the propriety of those instructions can be the better understood. For some months prior to the killing, Kohn and the defendant had been buyers, respectively, for different hide houses in the city of St. Louis, and there had grown up between them quite a brisk business rivalry. In connection with this, one witness speaks of the defendant using, on one occasion, an expression of strong and contemptuous dislike for Kohn, the deceased. On the evening of the homicide, and after it had become quite

dark, the defendant, who had been discharged from employment that day, went down to the warehouse of Brown & Company, where Kohn was at work, and asked Mullen if Kohn was in, and being answered in the affirmative, told him to tell Kohn "a man wanted to see him," and when Kohn came towards the door of the warehouse, which, it seems, was on an alley, and was within about five or six feet of the entrance, he spoke to the defendant and said, "do you want to see me?" when the defendant replied: "Sam, you son of a b——, I want to see you," and immediately shot him, and in a moment or two shot him again. Within a very short time after this, the defendant, with the gun still in his hand, met Chris Luittile, and told him, "I shot the son of a b——." Proceeding on his way, the defendant went to the store of Metzger, an acquaintance of his, and left the gun there, saying, "I'll be back in a minute." Walked out through the back way, and never returned. From there he went over to Illinois in a skiff, almost immediately recrossed the river on the bridge, and went out into the city some four miles distant from the scene of the homicide, had his hair cut short, and his goatee and mustache shaved off, and was in a saloon playing cards when arrested by officer Emmett some three days after the killing occurred. On his way to the Four Courts, defendant confessed the homicide to the officer; spoke of the deceased in most opprobrious terms, said he ought to have been dead long ago, that Kohn had been telling people that he, the defendant, was drunk, when he had taken the pledge and was not drinking anything. Asked by Emmett where he went after killing Kohn, he replied, as testified to by Emmett, as follows: "I asked him where he went to; and he says, 'I will tell you just to show what presence of mind a man has got after doing such a thing as this;' he says, 'I had sense enough to go to the river and jump into a skiff, and when I got down there some fellow knew me, and hallooed out to me,

"is that you Jerry?" He says, "where are you going? Are you going hunting?" I said, I am going over and you can come over to get your skiff; then he said he went across the river and came back over the bridge and went out to Cheltenham, and he had been out around in that neighborhood until he was captured." The defendant also told the officer he would have gotten away, but that in trying to jump on the 'Frisco train, he got caught on the switch, and hurt, and this was what detained him. He further stated to Emmett that if he had not arrested him that day, he would not have been arrested; for he intended to go away that night.

In support of the defence of insanity, it was shown that defendant's father had always been sober and industrious, until he attained the age of sixty-four, when he suddenly became addicted to excessive drink, which habit he continued for about one year, when he stopped it, altogether; and, at this time, marked peculiarities began to be noticed in his conduct, such as delusions and hallucinations. This continued, with gradual augmentation, till he finally was placed in an asylum for the insane, at the age of sixty-eight, where his malady was pronounced hopeless, in which condition he died, at the age of seventy. Defendant's mother was of a very nervous, excitable temperament, and was stricken with paralysis, in which condition she languished for two years, when she died. The defendant's brother committed suicide, at the age of nineteen, while in good physical health, and while his wants were all provided for. For the last fifteen years, the defendant, himself, had been addicted to excessive drink, several times having had *delirium tremens*, and, about seven years ago, he became infected with syphilis, and, several years ago, he received a blow on the head, which has since left a deep depression in the skull, and, for the last several years, marked peculiarities have been noticed in his conduct, such as acting, at times, under apparently incontinent impulses—on one

occasion cutting off his daughter's hair, with a knife, to her great disfigurement, assigning no reason for the deed, and making no comment, and not being under the influence of liquor at the time. He would get up in the night and be gone for several hours at a time, and used often to complain of pains in his head; that the day before, and the day of the killing, he complained of being sick, and immediately before the killing, while returning to his house, on the street-car, his talk and manner attracted the attention of an old acquaintance; and, in crossing the street, while going for his gun, his wild gesticulations and distorted features attracted a neighbor's attention, as well as that of the members of his own family.

That portion of the instruction to which objection is made, is as follows: "In this case, insanity is interposed by defendant's counsel as an excuse for the charge set forth in the indictment.

"This defence, when established, is one the law recognizes, and should insanity be proved by the evidence in this case, to the reasonable satisfaction of the jury, it would be the duty of the jury, in that event, to acquit the defendant, altogether.

"Insanity is a physical disease located in the brain, which disease so perverts and deranges one or more of the mental and moral faculties as to render the person suffering from this affliction incapable of distinguishing right from wrong, in reference to the particular act charged against him, and incapable of understanding that the particular act in question was a violation of the laws of God, and of society.

"Wherefore, the court instructs the jury that if they believe and find, from the evidence, that, at the time he did the killing charged in the indictment, the defendant was so perverted and deranged, in one or more of his mental and moral faculties, as to be incapable of understanding, at the moment he killed Samuel Kohn, that

such killing was wrong, and that he, the defendant, at that time, was incapable of understanding that this act of killing was a violation of the laws of God and society, if the jury find that he was so insane, they should find him not guilty.

"Insanity is either partial or general.

"General alienation always excuses.

"Partial insanity does not always excuse. One may be partially insane, and yet be responsible for his criminal acts.

"The law does not excuse, unless the derangement is so great that it actually renders the person incapable, at the time of its commission, of distinguishing between right and wrong, in respect to the particular act charged and proved against him.

"The law presumes every person, who has reached the years of discretion, to be of sound mind, and this presumption continues, until the contrary is shown. So that when, as in this case, insanity is pleaded, as a defence to a criminal charge, the fact of the existence of such insanity, at the time of the commission of the act complained of, must, before you can acquit on that ground, be established by the evidence, to your reasonable satisfaction, and the burden of proving this fact rests with the defendant.

"To establish the insanity of the defendant, positive and direct proof of it is not required. To entitle him to an acquittal, by reason of his insanity, circumstantial evidence, which reasonably satisfies your minds of its existence, is sufficient.

"The law presumes the defendant innocent, and the burden of proving him guilty rests with the state, and, before you should convict him, his guilt must be established beyond a reasonable doubt. On the other hand, to entitle the defendant to a verdict of not guilty, by reason of his insanity, the law requires him to prove it, not, however, beyond a reasonable doubt, but only to your reasonable satisfaction.

The State v. Pagels.

"From all this, it follows that, although you may believe and find that the defendant did the killing alleged, yet if, from the evidence, you further find that, at the time he did it, he was in such an insane condition of mind that he did not know he was doing wrong, and did not comprehend the nature and character of the act, then such killing was not, in law, malicious or felonious, and you ought to acquit him, on the ground of insanity, and, by your verdict, so say.

"The jury are the sole judges of the credibility of the witnesses, and the weight to be given to their testimony. If you believe that any witness has knowingly sworn falsely to any material facts, you are at liberty to reject all, or any portion, of such witness' testimony. This is applicable alike to the medical expert testimony, as to the testimony of the ordinary witnesses.

"Whether the hypothetical case, on which the opinions of the expert are based, corresponds to and coincides with the case of the defendant, the jury, alone, must determine in the light of the testimony presented on this trial. And whenever it supposes facts not given in evidence, it should be disregarded by the jury.

"The previous good character of the defendant, if proved to your reasonable satisfaction, is a fact in the case which you ought to consider in passing upon the question of his guilt, or innocence, of this charge.

"But if all the evidence in the cause, including that which has been given, touching the previous good character of defendant, shows him guilty of the charge, then his previous good character cannot justify, excuse, palliate, or mitigate the offence.

"The court instructs you that if you find the defendant not guilty, on the ground that he was insane at the time of the commission of the homicide charged, you will so state in your verdict, and you will also state whether defendant has entirely and permanently recovered from such insanity.

The State v. Pagels.

"If, on the whole case, you entertain a reasonable doubt of the guilt of the defendant, you should give him the benefit of it and acquit. But to justify an acquittal on the ground of doubt alone, it should be reasonable and substantial, and not a mere guess or conjecture of the possibility of innocence."

The court refused to give, at defendant's instance, this instruction :

"The court instructs the jury that if they believe and find, from the evidence, that, in the commission of the deed with which he stands charged, the defendant obeyed an uncontrollable impulse, springing from an insane delusion, they will find him not guilty."

Of the instructions given the jury, it is unnecessary to say more than that they express, in an exceedingly happy and lucid manner, the well-established law of this court, as shown by the instances from our own reports, cited by counsel for the state. The approval of the instructions given necessarily approves the refusal of the instruction refused. It will be a sad day for this state, when uncontrollable impulse shall dictate "a rule of action" to our courts. There are disclosed by the evidence in this case so many indications of intelligent purpose, premeditated design, a sense of guilt, desire and intention to escape punishment, as would have made it a marvel had the jury found otherwise than as they did. And in relation to experts, and the value of their testimony in regard to the questions of insanity and criminal responsibility, it is well enough to refer to the following authorities : Whart. Crim. Evid. [9 Ed.] sec. 420, and cas cit. ; Lawson's Expert Evid., p. 240, rule 44.

Finding no error in the record, we affirm the judgment, and direct the sentence pronounced to be executed. R. S., sec. 1994. All concur.