## THE STATE v. LANAHAN, *Appellant.*

Division Two, May 17, 1898.

1. **Criminal Law**: CHANGE OF VENUE: AFFIDAVIT OF TWO CITIZENS. The right of defendant in a criminal case to a change of venue is purely statutory, and in order to entitle him to it he must comply with the terms of the statute governing the change. So that if he applies for a change of venue on the ground that the people of the county are prejudiced against him, he must support the application by the affidavits of two creditable citizens, and if he fails to do this the application should be denied.

2. ————: DISQUALIFYING SHERIFF: ELISORS. Compliance with a motion to disqualify the sheriff and his deputies and to appoint an elisor to take charge of the jury, is largely in the discretion of the trial judge, and in the absence of some fact in the record showing that this discretion was unwisely exercised, the appellate court will not interfere. In this case the sheriff was a witness, the defendant having made a confession to him, and the motion was denied.

3. ————: INDICTMENT: TWO COUNTS: MOTION TO ELECT. Where both counts in an indictment charge the same offense, but allege that it was done with different instruments, the same-evidence being permissible under either count, the motion to compel the State to elect is properly overruled. In this case the first count alleged that the murder was committed by striking and wounding the deceased upon the head with a weapon, a description of which was to the jurors unknown; and the second count charged that it was done by cutting and stabbing her in and upon the lower part of her body with a certain knife.

*Appeal from Cole Circuit Court.*—HON. JOSEPH R. EDWARDS, Special Judge.

AFFIRMED.

*H. A. Edwards* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam. B. Jeffries*, Assistant Attorney-General, for the State.

(1) The right to change of venue is entirely of statutory regulation; and unless some authority is

given by the statute, none exists.    *State v. Sanders*, 106 Mo. 188; *State ex rel. v. Wofford*, 119 Mo. 408.    A change of venue is not a constitutional right, and it is entirely competent for the legislature to provide the terms upon which it shall be granted.    *State ex rel. v. Wofford*, 119 Mo. 375.    (2) The application in the case for a change of venue from the county was not supported by the affidavits of two credible disinterested citizens, and, therefore, not complying with the statute, it was properly overruled.    *State v. Neiderer*, 94 Mo. 79; *State v. Sayers*, 85 Mo. 585; *State v. Cavanaugh*, 76 Mo. 53. (3) Section 8188, Revised Statutes 1889, provided when sheriff is disqualified by relationship, or it shall appear to the court that the sheriff is prejudiced against either party, the coroner shall execute all writs and process in the proceedings.  The meaning of the statute was to substitute the coroner for the sheriff in respect to the duties of his office whenever the sheriff was disqualified.    *State v. Smith*, 90 Mo. 42.    The motion in this case was made for an elisor.    An elisor at common law was not appointed until the coroner was disqualified.    3 Black. Com., p. 354.    The record does not show the coroner was disqualified, and the court would not have been authorized to appoint some one else than the coroner until the coroner was disqualified. 90 Mo. 37; R. S. 1889, sec. 8188.  (4) But the court heard the testimony on the question of the disqualification of the sheriff and decided he was qualified, and in the absence of something in the record showing an abuse of the discretion of the court in the matter, this court will not disturb the action of the trial court on this question.    *State v. Leabo*, 89 Mo. 247.  (5) The motion to elect was properly overruled, for a court will never compel an election where it is clear there is only one offense.    Some modes of killing may be set out in different counts of the indictment for murder. 64 Mo.

107; 66 Mo. 631; 67 Mo. 604; 58 Mo. 556. (6) The first instruction properly defined murder in the first degree, the assault and the nature of it was alleged. The manner in which the homicide was committed was set forth with accuracy. The assault was charged in two counts, one with a knife and one with a blunt instrument, and where both contribute to the death this is proper, and the instruction was predicated upon the two counts charging the two assaults, both contributing to her death. *State v. Patterson*, 73 Mo. 693; *State v. Wieners*, 66 Mo. 13; *State v. Wilson*, 98 Mo. 440; *State v. Musick*, 106 Mo. 210. (7) Instruction number 3 correctly declared the rule with reference to the weight of the evidence and the credibility of the witnesses. *State v. Ellis*, 74 Mo. 207; *State v. Smith*, 114 Mo. 406; *State v. Palmer*, 88 Mo. 568; *State v. Elkins*, 63 Mo. 159. (8) The State has the right to prove all that the defendant said with reference to the alleged crime, so long as the statement was voluntary, and not induced by promise, or hope or fear. *State v. Talmage*, 107 Mo. 543; *State v. Elliott*, 90 Mo. 350; *State v. Miller*, 49 Mo. 505. (9) Instruction number 7 properly declared the law with reference to statements made by defendant in conversation proven by the State. *State v. Carlisle*, 57 Mo. 102; *State v. Young*, 119 Mo. 495; *State v. Dickson*, 78 Mo. 438; *State v. Hicks*, 92 Mo. 431.

BURGESS, J.—At the March term, 1897, of the circuit court of Cole county the defendant, a negro, was indicted by the grand jury of said county, for murder in the first degree, for the killing of Willie Gains, a negro girl, in Jefferson City, on the twenty-fifth day of December, 1896. The indictment is in two counts. In the first count the murder is alleged to have been

VOL. 144 mo—3

committed by striking and wounding the deceased upon the head with a certain weapon, a description of which was to the jurors unknown, and in the other by cutting and stabbing her in and upon the lower part of her body with a certain knife.

By written stipulation between F. E. Luckett, the prosecuting attorney of Cole county, and the defendant, the case was tried before the Hon. J. R. Edwards, as special judge. At the July term, 1897, of said circuit court defendant filed his application for a change of the venue of said cause from the county of Cole upon the ground of the prejudice of the people thereof against him, and in support of said motion offered oral testimony, which was excluded by the court for the reason that the law requires such application to be supported by the affidavits of two credible witnesses before any oral testimony can be heard. To which ruling of the court defendant duly excepted.

Defendant thereafter at the same term of said court filed his motion to disqalify the sheriff of the county and his deputies, and to appoint an elisor to take charge of the jury, and wait upon the court, upon the ground that said sheriff, S. H. Sone, and his deputies were biased and prejudiced against defendant and would prevent him from having a fair trial. This motion was also overruled over the objection and exception of defendant. Defendant next filed his motion that the State be required to elect upon which count in the indictment it would proceed to trial, which was also overruled by the court, and defendant excepted. On the twenty-sixth day of August, 1897, it being the sixteenth day of the July term, 1897, defendant was put upon his trial and convicted of murder in the first degree. In due time he filed motions for a new trial and in arrest, which being overruled he saved his exceptions and appealed.

The facts are, as disclosed by the record, that To be Lanahan, the defendant, was employed by Mr. Stampfli, who had a furniture store on High street,and the duties of defendant were to drive the furniture wagon, sweep out the store, and carry goods, and do the heavy work generally about the place. The building was a two-story brick in front, and three stories, including the basement, in the rear, the ground sloping northward, and the building fronting southward. In the rear was a porch, and a pair of steps leading downward to the ground, and then another flight down three steps to a door going into the basement. The murder was committed on the night of December 25, 1896, and on the morning of December 26, 1896, James Myers, another employee of Mr. Stampfli's, a white man, about 7:30 o'clock in the morning was going down the steps in the rear into the basement and discovered the murdered girl lying on the ground in the alley in the rear of the store. The body was removed into the basement of the Stampfli store. Myers then went up to the second floor of the Stampfli building where defendant was and told him of the murder, and said to him that he, the defendant, was suspected of the crime. Defendant then said to Myers, "You take this big knife and I will say I gave it to you or sold it to you, or sold it or gave it to some one else." Myers refused to take the knife and defendant pitched it on top of a wardrobe in the furniture store, from which it was afterward taken and given into the hands of 'Squire Stone, and by him given into the hands of the prosecuting officer.

The evidence showed that the defendant was seen on the corner of High and Jefferson streets with the deceased about half past five o'clock in the evening. The mother of deceased had sent her from her home to Brandenberger's drug store on an errand, and the

girl meeting defendant, walked up Jefferson street to High street, and they were there seen together. The girl, it seems, went eastward on High street to a store, and defendant went across the street toward the corner leading to Stampfli's store. The defendant was next seen with the girl going down Jefferson street toward the mouth of the alley that runs in the rear of Stampfli's store, and at that time he had his arm around her. He was next seen a little later in the evening, by two young men, who came from the north, going south on Jefferson street toward High street, and just when they came to the mouth of the alley that runs back of Stampfli's store, the defendant emerged therefrom, and spoke to them. The defendant was seen again by a policeman about twelve o'clock that night, and again at five o'clock in the morning, in the bar of the Monroe House. About seven o'clock he went and awakened Myers, which was an unusual thing for him to do, and got the keys of the store from him and went down and opened up the store, or, at least, went to dusting off in the store. The day before being Christmas, Stampfli left his store about 10 o'clock, and Myers, the clerk, who lived in California, Missouri, left at noon for that place and returned at 6 o'clock in the evening. But before Meyers left he notified defendant, who was in the store with him, that the door on the porch was unlocked, and that he would leave it unlocked, so that defendant might go in or come out if he had any business to attend to in the store during the day. Defendant was left in the store. The door to the basement going into the alley was also locked, and the front door of the store was locked, but this back door leading onto the porch was unlocked. Inside the storeroom was a flight of stairs leading down to the basement.

When the girl was found there was a knife wound upon her abdomen about two inches to the right of the navel and the lower part of her body had been mutilated as if the parts around the private had been taken out, the external organs and the canal of the vagina had been cut out, and entirely removed from the body. She also had a wound upon the head which appeared to have been inflicted by some blunt instrument. When found in the alley her head and body were covered with dust of a yellowish, clayish character, mingled with blood, and she was lying on the frozen ground, which was somewhat damp the evening before. The dust on her body and on her hair corresponded with the dust found in the basement of the cellar; also the excelsior, pieces of which were found in her hair and about her clothing, corresponded with the excelsior in the basement of Stampfli's store. The floor of the basement at the door showed that it had been recently swept. The defendant, after he was confined in the jail, admitted the murder to several different witnesses, who testified to it, and who were his fellow prisoners in the county jail. He also made a confession to Sheriff Sone. In his confession to Sheriff Sone he said he came across little Willie Gains by the livery stable; that they walked up the street and stopped at the corner of Lohman's for a while, and that she went down the street towards the corner east; and there was a strange white man who came over to him from the Central hotel and said to him that he would give him $5 if he would bring that girl where he could use her, and defendant said all right; and when deceased came back to Lohman's corner he took her and went behind Stampfli's store, and defendant went up the steps into the door that leads into the store from the porch and then down into the basement, and opened the basement and let the girl and the strange

man into the basement and went out and left them, and that was the last time he saw the girl alive.

The defendant denied making the confession to his fellow prisoners in jail. The defendant's relatives, his mother-in-law and wife and his brother-in-law, testified that defendant was at the home of his mother-in-law from about 8 o'clock to 11 o'clock or 11:30 that night, and defendant's wife testified that defendant slept with her all that night.

While defendant is not represented in this court he was in the court below, and the attorney who represented him in that court made and saved a number of points which will receive our consideration. The first of these is with respect to the action of the court in refusing defendant's application for a change of venue. This application was not supported by the affidavit of two or more credible, disinterested citizens of the county, as required by section 4156, Revised Statutes 1889. It was supported by the affidavit of the defendant alone. The right of a defendant in a criminal case to a change of venue is purely statutory, and in order to entitle him to it he must comply with the terms of the statute which entitle him thereto. *State v. Neiderer*, 94 Mo. 79. There was no error in overruling the application.

Nor was there error committed in overruling defendant's motion for the removal of the sheriff, and the appointment of an elisor to take charge of the jury during the trial. This was a matter resting largely in the discretion of the court, who, after hearing the testimony adduced in support of the motion overruled it, and in the absence of some fact in the record showing that the discretion was unwisely exercised, this court will not interfere. *State v. Leabo*, 89 Mo. 247.

With respect to the motion of defendant to require the prosecuting attorney to elect upon which count of

the indictment he would proceed to trial, it was entirely without merit. Both counts charged the same offense, but alleged that it was committed with different instruments. The same evidence was permissible under either count. The motion was properly overruled. *State v. Porter*, 26 Mo. 201; *State v. Pitts*, 58 Mo. 556; *State v. Sutton*, 64 Mo. 107; *State v. Green*, 66 Mo. 631.

Among the causes assigned in the motion for a new trial is the action of the court in admitting improper evidence on the part of the State, and in rejecting competent, relevant and material evidence offered by the defendant, but after a careful reading of the record we have been unable to find anything in it which seems to justify either contention. It is also claimed in the motion for a new trial that the court should have instructed for murder in the second degree, but there is nothing disclosed by the record, upon which to predicate such an instruction. The instructions given presented the case to the jury in accordance with the facts disclosed by the evidence, and are we think free from error. The indictment is without objection and in accord with approved forms in such cases.

While the evidence connecting defendant with the homicide was circumstantial, it showed his guilt, beyond any question, of a crime which for its barbarity and cruelty stands unparalleled in the history of criminal jurisprudence.

There was not a particle of evidence tending to connect any other person with its commission, but there was developed upon the trial a chain of circumstances so closely connecting defendant with the homicide that there is no escape from the conclusion that he is guilty beyond any and all doubt. The verdict of the jury was approved by the court, the case was unusually well tried, and the record free from

error; so that we can but affirm the judgment, and direct the sentence pronounced by the court below to be executed.

GANTT, P. J., and SHERWOOD, J., concur.

